J-A15007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ELLIS FATTIZZI | : | |
| | : | |
| Appellant | : | No. 2161 EDA 2019 |

Appeal from the Judgment of Sentence of March 19, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0006167-2018

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                     **FILED JULY 06, 2020**

Ellis Fattizzi appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, after he was convicted, following a non-jury trial before the Honorable Brian T. McGuffin, of driving under the influence of a controlled substance ("DUI"),[1] recklessly endangering another person ("REAP"),[2] possession of a controlled substance,[3] and possession of drug paraphernalia.[4]  Upon careful review, we vacate Fattizzi's conviction for REAP, affirm all other convictions, and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(2).

[2] 18 Pa.C.S.A. § 2705.

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(32).

Judge McGuffin set forth the facts of this matter as follows:

At approximately 9:00 p.m. on April 15, 2018, [Fattizzi] was found slumped over in the driver's seat of a grey Hyundai Elantra with the engine running while the car was parked diagonally over two parking spots in the parking lot at Lakeview Terrace Apartments located off South Oaks Boulevard in Falls Township. [Fattizzi] was the only person in the vehicle. [Fattizzi] was unresponsive when Officer Ronald MacPherson attempted to alert [him] to police presence by identifying himself and knocking on the car windows more than twenty times. All of the car doors were locked. [Fattizzi's] skin appeared pale, clammy, and kind of wet. A cell phone and clear Ziploc bag containing a pink wax paper bag were seen on [Fattizzi's] lap, which in Officer MacPherson's experience typically contains heroin.

[Fattizzi] eventually responded to the knocking on the windows by revving the engine, which caused the car to shake, but not leave its parked position. Officer MacPherson responded by breaking the rear passenger[-]side window to unlock the car door for safety reasons. After the driver's side door was opened, a cut straw [and used baggies were] discovered on the floor along the left side of the driver's seat[.] A white powdery substance was inside the cut straw and [Fattizzi's] left nostril. Officer MacPherson believed that [Fattizzi] had overdosed on heroin based on his observations.

Officer Jason Blickley administered Narcan to [Fattizzi's] left leg to revive him based on the apparent overdose. Officers Blickley and [Tom] Lundquist helped [Fattizzi] out of the car, during which time [Fattizzi] was swaying, had difficulty maintaining his balance, and needed assistance to be held up. [Fattizzi] was transported away from the scene in an ambulance. Officer MacPherson collected the drugs and related paraphernalia at the scene[, wearing] medical gloves to avoid potential contamination with fentanyl or carfentanil. Officer MacPherson was well aware of the potential risk of harm that is always present when people use heroin. Based on his observations, Officer MacPherson determined that [Fattizzi] was under the influence "to a degree unacceptable to operate a motor vehicle." [Fattizzi] received intranasal Narcan while in the ambulance.

One of the EMTs who was taking care of [Fattizzi] in the ambulance, Bradley Woods, picked up one of [Fattizzi's] phones (which was ringing at the time) while using gloves, to notify the

caller that [Fattizzi] was being transported to the hospital. [Woods] absentmindedly placed the cell phone between his shoulder and cheek, with his cheek coming into contact with the phone's display screen. Within minutes, [Woods] felt his respiration slow down and he became dizzy. [Woods] attempted to administer Narcan to himself in the back of the ambulance[,] but because he could not find the needle, he passed out until he regained consciousness in the hospital. [Woods] suffered lingering symptoms such as tachycardia, and was required to follow up with a medical visit the day after the incidence[.] He has had no substantial follow-up since that time. Based upon direct testimony, extrapolation from other testimony in this case, and what happened to [Fattizzi] and to [Woods], [Woods] could have potentially suffered cardiac arrest and then death if he had not been administered Narcan.

. . .

Three pink paper bags[,] stamped 4PE in blue [and] containing the white substance[,] were tested. The lab report revealed that the substance tested positive for fentanyl with a weight of .84g. No blood sample was taken from [Fattizzi] based on [his] inability to give consent.

Trial Court Opinion, 9/25/19, at 1-3.

Judge McGuffin found Fattizzi guilty of the above offenses on March 13, 2019. Sentencing was held on March 19, 2019, at which time the court sentenced Fattizzi to 72 hours' to 6 months' incarceration for DUI, followed by a consecutive period of 18 months of probation for REAP. Fattizzi filed a post-sentence motion for judgment of acquittal on April 1, 2019,[5] on which counsel erroneously affixed the caption for Fattizzi's other DUI matter. On April 3, 2019, Fattizzi filed a "Motion to Deem Timely the Late Filed Post-Sentence

---

[5] The court and both parties state that the post-sentence motion was filed on March 29, 2019. However, the docket indicates it was filed on April 1, 2019. *See* Criminal Docket No. CP-09-CR-0006167-2018, at 6.

Motions under the Above Captioned *Nunc Pro Tunc*," which the court granted on April 12, 2019. On June 28, 2019, the trial court denied Fattizzi's post-sentence motion. Fattizzi filed a motion for reconsideration of that order on July 15, 2019, which the court never ruled upon. Fattizzi filed a timely notice of appeal on July 29, 2019,[6] followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Fattizzi raises the following claim for our review:

Where the [trial] court concluded that [Fattizzi] was guilty of [REAP], after he locked himself in his vehicle; ingested a controlled substance, which caused him to overdose; the police broke into his car; his family continuously called and texted him; and an emergency medical services paramedic ignored his training and experience and put [Fattizzi's] phone against his cheek and answered it, was this foreseeable conduct and sufficient evidence to find guilt beyond a reasonable doubt? And should the [trial] court have disregarded the learned authority from the two leading toxicology associations in this country, and the Journal of the Emergency Medical Services, which all opined that it is impossible for such a person to have overdosed from skin contacting [Fattizzi's] phone, in concluding the evidence was sufficient as a matter of law?

Brief of Appellant, at 2.

---

[6] The thirtieth day following the denial of Fattizzi's post-sentence motion fell on a Sunday. Thus, Fattizzi had until the following Monday to file a timely notice of appeal. **See** 1 Pa.C.S.A. § 1908 (when computing 30–day appeal period "[if] the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation."). We also note that Fattizzi erroneously stated that his appeal was from the order denying the post-sentence motion. "In a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post[-]sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (citation omitted). We have altered the caption accordingly.

Fattizzi challenges the sufficiency of the evidence supporting his conviction for REAP. A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). As such, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019). In reviewing such a challenge, we must determine whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Vetrini*, 734 A.2d 404, 406 (Pa. Super. 1999) (citations omitted).

> In applying the above test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

Fattizzi challenges his conviction for REAP. A person commits the offense of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. §

2705. Thus, to establish REAP, the Commonwealth must prove: (1) a *mens rea* of recklessness; (2) a physical act; (3) causation; and (4) danger to another person of death or serious bodily injury. **Commonwealth v. Reynolds**, 835 A.2d 720, 727-28 (Pa. Super. 2003).

> A person acts in a reckless manner when he
>
> consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

"Serious bodily injury" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To establish criminal causation, "the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." **Commonwealth v. Leaner**, 202 A.3d 749, 768 (Pa. Super. 2019). Finally, the "mere apparent ability to inflict harm is not sufficient [to support a REAP conviction]. Danger, and not merely the apprehension of danger, must be created." **Commonwealth v. Trowbridge**, 395 A.2d 1337, 1340 (Pa. Super. 1978) (footnote omitted).

Here, Fattizzi argues that the Commonwealth failed to satisfy any of the four prongs necessary to establish REAP as set forth in **Reynolds**, **supra**.

Fattizzi asserts that he did not possess the requisite *mens rea* of recklessness; rather, he asserts that his actions rose no higher than negligence. He argues that, rather than consciously disregarding a known risk, he "sought to insulate himself from the outside world by locking his car doors, and . . . tried not to create harm to others." Brief of Appellant, at 22. Fattizzi further argues that he took no affirmative action that would have placed another in danger, and his conviction resulted from such a "convoluted set of circumstances" that it would have been "virtually impossible" for him to foresee the resulting injury to Paramedic Woods. ***Id.***

We agree with Fattizzi that, under the unique circumstances of this case, his conviction for REAP cannot stand. Indeed, to affirm his conviction would set a dangerous precedent whereby any individual who suffers an overdose of opioids requiring the assistance of emergency medical personnel could risk prosecution for REAP based solely on the presence of drugs and drug paraphernalia in the vicinity of his or her unconscious body.

We view the primary issue in this matter as one of foreseeability, which is relevant to both the *mens rea* and causation elements of REAP. Inherent to the concept of "recklessness" is that a person is aware of a substantial and unjustifiable risk, yet consciously disregards it in proceeding to act. "Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious

inadvertence." ***Tayar v. Camelback Ski Corp., Inc.***, 47 A.3d 1190, 1200 (Pa. Super. 2012).

Similarly, with regard to the causation element of REAP, this Court has previously characterized the issue as "a question of degrees of foreseeability." ***Commonwealth v. Baker***, 429 A.2d 709, 710 (Pa. Super. 1981). "Where the . . . result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt." ***Commonwealth v. Leaner***, 202 A.3d 749, 769 (Pa. Super. 2019) (addressing issue of causation in context of second-degree murder sufficiency challenge) (citation omitted). Therefore, the question we must answer is: "[W]as the defendant's conduct so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability[,] or was the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it?" ***Commonwealth v. Rementer***, 598 A.2d 1300, 1304–05 (Pa. Super. 1991).

Here, Fattizzi stopped his car in the parking lot of an apartment complex and ingested opioids, which caused him to suffer an overdose and pass out. As a result of those actions, it was foreseeable that Fattizzi might be observed by passers-by, who, in turn, might alert authorities to his presence. It was also foreseeable that he might overdose and require the assistance of emergency medical personnel. We do not, however, believe that Fattizzi could reasonably have foreseen the obscure chain of events that led to Paramedic Woods' exposure to opioids. As a trained paramedic, Woods would have been

expected to observe proper safety precautions when assisting an overdose victim. Indeed, Woods was well aware of the dangers attendant to accidental exposure to opioid drugs and wore gloves to prevent "cross-contamination."[7]

---

[7] Paramedic Woods testified as follows at trial:

> Q: Did you do anything, once you noticed that [Fattizzi's phone was receiving numerous texts and calls]?
>
> A: Yes, with a gloved hand, I used my knuckle—I didn't look for any specific one.
>
> I just held it, and I typed, call EMS. It occurred to me that somebody might actually care about this person, and I thought it would be best to let them know where he was going and what happened.
>
> Q: Is that something you would typically do with gloved hands?
>
> A: Gloved hands, yes.
>
> Q: Why gloved?
>
> A: **I try not to touch anything with, you know, bare hands, especially when it comes to a potential drug user from cross-contamination.**

N.T. Trial, 3/13/19, at 52-53 (emphasis added).

Similarly, Officer Ronald MacPherson described his use of gloves when removing drug and drug paraphernalia evidence from Fattizzi's car:

> Q: What do you mean by handled safely with medical gloves? Why would you do that?
>
> A: Sometimes heroin is mixed with different drugs, such as [f]entanyl or [c]arfentanil. If those drugs make contact with your skin, your glands, or your pores, you can actually suffer an overdose, as an officer, just by touching the bags or the paraphernalia.

N.T. Trial, 3/13/19, at 52. However, when—for the first time in his career as a paramedic—Woods picked up his patient's phone, he placed it against his bare skin, contrary to his training and experience. While Woods' efforts to alert Fattizzi's loved ones to his predicament were humane and admirable, we are constrained to conclude that his injuries were so remote and attenuated in relation to Fattizzi's actions that it would be unfair to hold Fattizzi criminally responsible. **Rementer**, **supra**. Accordingly, we vacate Fattizzi's conviction for REAP and remand the case to the trial court for resentencing.[8]

Judgment of sentence vacated; conviction for REAP vacated; all other convictions affirmed. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/20

---

**Id.** at 29-30.

[8] Because the court ordered Fattizzi's probationary sentence for REAP to run consecutively to his period of incarceration for DUI, the sentencing scheme is upset and we must remand for resentencing. **Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006)